**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| | CIVIL ACTION NO. |
| | 1:06-CV-01652 |
| v. | |
| CITY OF EUCLID, OHIO and | JUDGE KATHLEEN M. O'MALLEY |
| CUYAHOGA COUNTY | |
| BOARD OF ELECTIONS | |
| Defendants. | |

**UNITED STATES' MOTION IN LIMINE TO EXCLUDE
PORTIONS OF DR. JEFFREY ZAX'S EXPERT REPORT**

Plaintiff, the United States of America, moves this Court to exclude or rule inadmissible the testimony of Dr. Jeffrey Zax with respect to the first precondition of Thornburg v. Gingles, 478 U.S. 50 (1986) for the following reasons:

1. "The first Gingles precondition requires that the 'minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district.'" Mallory v. Ohio, 173 F.3d 377, 382 (6th Cir. 1999)(citation omitted). By his own admission, Dr. Zax lacks the relevant scientific, technical, or other qualified knowledge necessary to opine on this issue.[1]

---

[1] The Court's inquiry into an expert's qualifications implicates Daubert because, when the Court is faced with proffered expert testimony, it "must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 592 (1993) (footnote omitted).

2. Dr. Zax's lack of qualifications necessary to opine on the first <u>Gingles</u> precondition is exhibited by his inability to cite any authority for his approach to analyzing the first <u>Gingles</u> precondition.

3. Dr. Zax's analysis is irrelevant because it does not address the issue facing the Court with respect to the first <u>Gingles</u> precondition. <u>Daubert</u>, 509 U.S. at 597 (expert testimony must be "relevant to the task at hand.")

4. The carelessness of Dr. Zax's application of his approach underscores his lack of expertise.

           Respectfully Submitted,

           WAN J. KIM
           Assistant Attorney General
           Civil Rights Division

           GREGORY A. WHITE
           United States Attorney

           JOHN K. TANNER
           Chief, Voting Section

           CHRISTOPHER COATES
           Principal Deputy Chief, Voting Section

           /s/ Abel Gomez
           ABEL GOMEZ
           SEAN W. O'DONNELL
           SONYA L. SACKS
           Attorneys, Voting Section
           U.S. Department of Justice, Civil Rights Division
           950 Pennsylvania Avenue, N.W.
           Washington, D.C. 20530
           202-305-1582 (phone) / 202-307-3961 (facsimile)
           abel.gomez@usdoj.gov (email address)
           Attorneys for the United States of America

**CERTIFICATE OF SERVICE**

      I certify that on July 2, 2007, a copy of the foregoing United States' Motion in Limine to Exclude Portions of Dr. Jeffrey Zax's Expert Report was served to the following Defendants' attorneys via Federal Express Next Day Delivery:

    HILARY S. TAYLOR
    Weston Hurd LLP
    The Tower at Erieview
    1301 East 9th St., Suite 1900
    Cleveland, Ohio 44114-1862

    CHRIS FREY
    City of Euclid, Law Director
    Euclid City Hall
    585 East 222nd Street
    Euclid, OH 44123

    ATTORNEYS FOR DEFENDANT CITY OF EUCLID, OHIO

    WILLIAM D. MASON
    County Prosecuting Attorney
    DAVID LAMBERT
    Assistant County Prosecuting Attorney
    Justice Center Bld.
    1200 Ontario Street, Cleveland, OH-44115

    ATTORNEY FOR DEFENDANT CUYAHOGA COUNTY BOARD OF ELECTIONS

                             /s/ Abel Gomez
                             ABEL GOMEZ
                             Attorney for the United States of America

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 1:06-CV-01652 |
| CITY OF EUCLID, OHIO and CUYAHOGA COUNTY BOARD OF ELECTIONS, | JUDGE KATHLEEN M. O'MALLEY |
| Defendants. | |

**UNITED STATES' MEMORANDUM IN SUPPORT
OF ITS MOTION IN LIMINE TO EXCLUDE
PORTIONS OF DR. JEFFREY ZAX'S EXPERT REPORT**

**I. INTRODUCTION**

Plaintiff United States of America charges Defendant City of Euclid ("City") with having a method of election that denies African-Americans the ability to elect candidates of choice, in violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973. An integral part of proving a vote dilution claim is satisfying the three preconditions found in Thornburg v. Gingles, 478 U.S. 50 (1986). The three preconditions are:

> First, the minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district. . . . Second, the minority group must be able to show that it is politically cohesive. . . . Third, the minority group must be able to demonstrate that the white majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate.

Id. at 50-51.  To establish the three Gingles preconditions, the United States will offer at trial the expert testimony of Dr. Lisa Handley, a political scientist with substantial experience in voting methods and districting.  In response, the City will offer at trial the expert testimony of Dr.

- 1 -

Jeffrey Zax, an economist at the University of Colorado.  As set forth below, Dr. Zax's expert testimony with respect to the first Gingles precondition should be excluded or ruled inadmissible.  By his own admission, Dr. Zax does not have any expertise in any field that would inform an expert in this area.  Additionally, Dr. Zax's lack of qualifications is exhibited by his inability to cite any support for his analysis of the first Gingles precondition.  Indeed, it is clear that Dr. Zax's expert testimony is contrary to the controlling legal standard set forth in the case law.  As such the Court should, based on Rule 702 of the Federal Rules of Evidence, exclude his testimony with respect to the first Gingles precondition.

## II.  LEGAL STANDARD

"A federal district court's authority to manage trials includes the power to exclude evidence pursuant to motions in limine."  Tzoumis v. Tempel Steel Co., 168 F. Supp. 2d 871, 873 (N.D. Ill. 2001) (citing Falk v. Kimberly Services, Inc., 1997 WL201568 at *1 (N.D. Ill. April 16, 1997));  Luce v. United States, 469 U.S. 38 n.4 (1984).  "[T]he motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings."  Id. (citing Jonasson v. Lutheran Child & Family Services, 115 F.3d 436, 440 (7th Cir. 1997).  It is a particularly important tool when the Court is carrying out its evidentiary "gatekeeping" responsibilities regarding the admissibility of expert testimony.  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993); see also Fed. R. Evid. 104(a).

Pursuant to Rule 702, the Court may rely on expert testimony where "scientific, technical, or other specialized knowledge will assist [it] to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  "Expert testimony is admissible if made by (1) a qualified expert, (2) testifying on a proper subject, (3) in conformity to a generally accepted

explanatory theory, and (4) its probative value outweighs its prejudicial effect." United States v. Moses, 137 F.3d 894, 899 (6th Cir. 1998) (citing United States v. Kozminski, 821 F.2d 1186, 1194-95 (6th Cir. 1987); United States v. Green, 548 F.2d 1261, 1268 (6th Cir. 1977)). To qualify as an expert, a witness must possess relevant "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; see also Botnick v. Zimmer, Inc., 484 F. Supp. 2d 715, 719 (N.D. Ohio 2007) ("A witness must first establish expertise through 'knowledge, skill, experience, training, or education.'").[1] Ultimately, the City bears the burden of showing that Dr. Zax possesses the expertise necessary to offer an expert opinion and that his testimony is in conformity with a generally accepted explanatory theory. Kamp v. FMC Corp., 241 F. Supp. 2d 760, 761 (E.D. Mich. 2002) (quoting Fed. R. Evid. 702 advisory notes); see also Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1319 (9th Cir. 1995) (noting that it is not enough for a party to rely on an expert's qualification and the expert's assurances of reliability).

### III. BACKGROUND

On February 1, 2007, pursuant to the Court's case management order, the United States served the City with the expert report of Dr. Handley. As part of her report, Dr. Handley opined on whether the City's African-American population is sufficiently large and geographically compact to constitute a majority in a single-member district. Ex. B at 2-3. Looking at the City's voting age population, Dr. Handley concluded that "two compact majority black wards can be drawn in the City of Euclid if an eight-single-member district plan is adopted." Id. at 1.

The City, on April 6, 2007, served the United States with the expert report of Dr. Zax. Included in his report was a critique of Dr. Handley's conclusion that two compact, majority-

---

[1] The Court's inquiry into an expert's qualifications implicates Daubert because, when the Court is faced with proffered expert testimony, it "must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 592 (1993) (footnote omitted).

- 3 -

minority districts could be drawn from an illustrative eight-district plan. Ex. A at 1-13. His analysis began by taking issue with the traditional measures used for purposes of the first Gingles precondition. Compare Id. at 2-3 with Black Political Task Force v. Galvin, 300 F. Supp. 2d 291, 300 (D. Mass. 2004) (summarizing the traditional measures used for purposes of the first Gingles precondition). He then uses the average turnout from only two of the 41 elections Dr. Handley analyzed to compute a hypothetical turnout rate for white and African-American voters. Importantly, Dr. Zax must rely on Dr. Handley's estimates because he does not actually undertake any statistical analysis of his own. Using the average estimated turnout from the 1999 Ward 3 and 2001 Slot C elections, Dr. Zax then examines the effectiveness of the two illustrative majority-minority districts using what he terms his "multiplication analysis." Ex. F at 185:20-186:3. Dr. Zax then concludes that the black-preferred alternative in Illustrative District 1 would lose by "a landslide," Ex. A at 8, and the black-preferred alternative in Illustrative District 3 would lose "with a paltry 23.2% of the vote," id. at 12.

In her rebuttal report, which the United States served to the City on May 10, 2007, Dr. Handley first points out that "Dr. Zax has confused the showing that minority voters have to make in order to satisfy the first precondition of Gingles with the remedy phase of a vote dilution challenge." Ex. C at 1. For completeness' sake, however, Dr. Handley then tests Dr. Zax's conclusion against "reconstituted election analysis," which "re-tabulate[s] previous election results to determine if the minority-preferred candidate or ballot alternative would have won in illustrative districts 1 and 3." Id. at 3; see also Johnson v. Miller, 864 F. Supp. 1354, 1391 (S.D. Ga. 1994) (relying on reconstituted election analysis). As demonstrated in Appendix A of Dr. Handley's rebuttal report, the reconstituted election analysis produces substantially different results from Dr. Zax's "multiplication analysis." Ex. C at 8-11. Indeed, using reconstituted

election analysis, Dr. Handley concludes that, in Illustrative District 1, the minority-preferred alternative wins in four of the six elections analyzed and, in Illustrative District 3, the minority-preferred alternative wins in all six elections analyzed.

## IV. ANALYSIS

"The first Gingles precondition requires that the 'minority group must be able to demonstrate that it is sufficiently large and geographically compact to constitute a majority in a single-member district.'" Mallory v. Ohio, 173 F.3d 377, 382 (6th Cir. 1999) (citation omitted). Examples of the sorts of expertise relevant to the first Gingles precondition include political science, Goosby v. Town Bd. of Hempstead, 956 F. Supp. 326, 333 (E.D.N.Y. 1997) (measuring dispersion in a district for purposes of compactness), demography, Black Political Task Force v. Galvin, 300 F. Supp. 2d 291, 300 (D. Mass. 2004) (considering racial-demographic identification issues), and geographic information systems, Mallory, 173 F.3d at 383 (using maps to show compactness of African-Americans). For example, Dr. Handley, the United States' expert with respect to the first Gingles precondition, is trained in political science and has experience in drawing districts.

### A. Dr. Zax lacks relevant scientific, technical, or other specialized knowledge

Dr. Zax lacks scientific, technical, or other specialized knowledge necessary to help the Court understand the first Gingles precondition. According to Dr. Zax's curriculum vitae, he has a doctorate in economics and experience in statistical analysis of voting patterns. As established by Dr. Zax's deposition testimony in this and other cases in which he offered expert testimony, however, he does not possess expertise in political science, geography, demographics, or geographic information systems. See Berry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir. 1994) ("The issue with regard to expert testimony is not the qualifications of a witness in the

abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."). In deposition testimony taken during Bone Shirt v. Hazeltine, 336 F. Supp. 2d 976 (D.S.D. 2004), Dr. Zax testified that he did not possess the expertise necessary to opine on issues relevant to the first Gingles precondition. Ex. E at 45:1-14; Ex. F at 183:24-185:14. Recently, during his deposition taken during discovery, Dr. Zax testified that he does not have expertise in political science, demography, or geographic information systems. Ex. F at 22:9-20, 186:17-187:8. Based on Dr. Zax's frank admissions, the Court should exclude his testimony with respect to the first Gingles precondition because he does not possess any of the expertise necessary to opine on the subject. See Botnick, 484 F. Supp. 2d at 719 ("For a Court to recognize a witness as a qualifying expert, the subject of the testimony must lie within the purview of the witnesses' expertise.") (citing Redman v. John D. Brush & Co., 111 F.3d 1174 (4th Cir. 1997); 4 Weinstein's Fed. Evid. § 702.06[1]).

**B. Dr. Zax's lack of qualifications is exhibited by his inability to cite any support for the use of his analysis in assessing the first Gingles precondition**

Dr. Zax's lack of qualifications necessary to opine on the first Gingles precondition is exhibited by his inability to cite any authority for his approach to analyzing the first Gingles precondition.[2] Neither in his report nor in his deposition has Dr. Zax cited any authority in support of his approach. See generally Ex. A; see also Ex. F at 185:20-187:22. Apparently this is because, in Dr. Zax's view, his analysis is "far too simpleminded to be dignified as a method. It's simple multiplication." Id. at 186:13-14. Taken at his word, Dr. Zax's analysis could be conducted by anyone who is familiar with arithmetic. However, if simple multiplication were all that was necessary to reach his conclusion, there would be no need for the Court to rely on his

---

[2]The United States does not dispute that this approach has been used in assessing the viability of proposed districts during the redistricting process in various states. However, as discussed below, this approach is not relevant to assessing the first Gingles precondition.

- 6 -

testimony.  See United States v. Langan, 263 F.3d 613, 621 (6th Cir. 2001) (discussing expert testimony that is not helpful because it will not contribute to the Court's understanding of the issue).  Therefore, his testimony on the first Gingles precondition should be excluded because it cannot assist the Court in understanding the issues that this precondition will present.

### C. Dr. Zax's lack of qualifications is exhibited by his ignorance of controlling legal standards

Dr. Zax's multiplication analysis is irrelevant because it does not address the issue facing the Court with respect to the first Gingles precondition.  As an initial matter, Dr. Zax shows no awareness of any controlling legal standard for examining the first Gingles precondition.  The thrust of the first Gingles precondition is whether "the minority group is sufficiently large and geographically compact to constitute a majority in a single-member district."  Rural West Tennessee African-American Affairs Council v. Sundquist, 209 F.3d 835, 839 (6th Cir. 2000) (citing Gingles, 478 U.S. at 50-51).  In other words, the United States must show that the illustrative districts give African-Americans the potential to elect preferred candidates.  See Gingles, 478 U.S. at 50 n.17 (referring to the potential of minority voters to elect representatives); see also McNeil v. Springfield Park Dist., 851 F.2d 937, 942 (7th Cir. 1988) (affirming lower court's interpretation of the first Gingles precondition to require that the illustrative district have an African-Americans voting age majority).  Contrary to Dr. Zax's assertion, Ex. A at 3, the first Gingles precondition does not require the United States to prove that the illustrative districts would guarantee that minority-preferred candidates and issues would always prevail.  To require this showing would penalize African-Americans for lower participation, which is something Congress has recognized as a symptom of a Section 2 violation.  As such, his analysis is not relevant to the Court's understanding of the first Gingles precondition.  Daubert, 509 U.S. at 597 (expert testimony must be "relevant to the task at hand.")

### D. Dr. Zax exhibits little care in analyzing the effectiveness of districts

Dr. Zax exhibited an insufficient standard of care in employing an analysis that is not yet ripe for the Court's consideration. In his report, Dr. Zax relies upon Dr. Handley's estimates of turnout and political cohesion, by race, for the 1999 Ward 3 election and the 2001 Slot C election. See, e.g., Ex. A at 3. Unfortunately, Dr. Zax does not give any critical consideration to whether these elections are pertinent to the illustrative district. For example, he is not aware of whether any part of the two illustrative districts is in Ward 3. Ex. F at 193:12-22, 196:22-25. Yet he is willing to impute turnout figures for one election in Ward 3 to the illustrative districts. Id.; Ex. A at 3. A cursory examination of the illustrative plan attached to Dr. Handley's expert report shows that none of District 1 and only part of District 3 is composed of Ward 3. Compare Ex. B at 2-3, 19 with Ex. D. Also, what Dr. Zax does not do is use actual data or estimated turnout figures to compute the possible turnout in the illustrative districts. Indeed, by his own admission, if he had actually analyzed election results, he could have computed estimated turnout, by race, for each precinct in the illustrative districts. Ex. A at 27 (noting that King's EI method "provides estimates of precinct-level and district-level turnout and cohesion").

Perhaps the simplest test of the reliability of one's conclusions is to test their predictions against actual data. Using reconstituted election analysis, which uses actual data, it is clear that Dr. Zax's conclusions also are absolutely at variance with the actual data. See Sanchez v. Colorado, 97 F.3d 1303, 1318 (10th Cir. 1996) ("Indeed, what seems most striking about [Dr. Zax's] analysis is that he used approximately the same numbers to *predict* outcomes, rather than focusing on the actual elections to examine their outcomes."). In this case, reconstituted election analysis completely refutes Dr. Zax's multiplication analysis. For example, Dr. Zax's assertion that "the black-preferred alternative in these contests would lose with a paltry 23.2% of the

- 8 -

vote," Ex. A at 12, is absolutely refuted by the reconstituted election analysis in Dr. Handley's rebuttal report, Ex. C at 1-3, App. A. This glaring disparity between Dr. Zax's conclusions and actual election results is such that the Court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered." General Electric Co. v. Joiner, 522 U.S. 135, 146 (1997). Therefore, the Court should exclude Dr. Zax's testimony on the first Gingles precondition because the unreliability of his analysis highlights his lack of expertise with regard to the first Gingles precondition. Id. (noting that the sufficiency of the expert's basis cannot be divorced from the ultimate reliability of the expert's opinion).

## V. CONCLUSION

Dr. Jeffrey Zax's expert testimony with respect to the first Gingles precondition should be excluded. By his own admission, Dr. Zax does not possess the qualifications necessary to help the Court's understanding of the first Gingles precondition. The only qualification Dr. Zax believes is necessary to conduct his analysis is the ability to do multiplication. Dr. Zax does not provide any support for his approach to analyzing the first Gingles precondition; nor is he aware of whether it is a generally accepted method. Not surprisingly, then, his conclusions are inherently unreliable. Dr. Zax does not account for turnout differences by different wards or for turnout differences between at-large and ward elections. Ultimately, Dr. Zax's use of the multiplication analysis demonstrates his utter lack of qualifications as an expert with respect the first Gingles precondition.

                        Respectfully Submitted,

                        WAN J. KIM
                        Assistant Attorney General
                        Civil Rights Division

                        GREGORY A. WHITE
                        United States Attorney

                        JOHN K. TANNER
                        Chief, Voting Section

                        CHRISTOPHER COATES
                        Principal Deputy Chief, Voting Section

                         s/Abel Gomez
                        ABEL GOMEZ
                        SEAN W. O'DONNELL
                        SONYA L. SACKS
                        Attorneys, Voting Section
                        U.S. Department of Justice,
                        Civil Rights Division
                        950 Pennsylvania Avenue, N.W.
                        Washington, D.C.  20530
                        202-305-1582 (phone);  202-307-3961 (facsimile)
                        abel.gomez@usdoj.gov (email address)
                        Attorneys for the United States of America

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

     Pursuant to 28 U.S.C. § 1746, undersigned counsel certifies that the foregoing United States' Memoranda in Support of its Motion In Limine to Exclude Portions of Dr. Jeffrey Zax's Expert Report is 10 pages and within the limitations of a standard track matter.

                         s/Abel Gomez
                        ABEL GOMEZ

## CERTIFICATE OF SERVICE

     I certify that on July 2, 2007, a copy of the foregoing United States' Memoranda in Support of its Motion in Limine to Exclude Portions of Dr. Jeffrey Zax's Expert Report was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

                         s/Abel Gomez
                        ABEL GOMEZ